UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON GAYNOR, an individual, NANCY GAYNOR, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CHAD SLADE, an individual, LINDA MCCRAKEN, an individual, and DOES 1 through 30, inclusive,<br><br>Defendants,<br><br>and Related Counterclaim. | Case No.: 21cv777 GPC(NLS)<br><br>**ORDER GRANTING COUNTERDEFENDANTS' MOTION TO DISMISS COUNTERCLAIM**<br><br>**[Dkt. No. 12.]** |

Before the Court is Counterdefendants' motion to dismiss the counterclaim. (Dkt. No. 12.) Counterclaimants filed an opposition to which Counterdefendants' replied. (Dkt. Nos. 17, 20.) Based on the reasoning below, the Court GRANTS Counterdefendants' motion to dismiss the counterclaim.

## Background

On April 20, 2021, Plaintiffs Don Gaynor ("Don") and Nancy Gaynor ("Nancy") (collectively "Plaintiffs" or Counterdefendants") who are husband and wife, filed a

1

complaint against Defendants Chad Slade ("Chad") and Linda McCraken[1] ("Linda") (collectively "Defendants" or "Counterclaimants") for breach of a promissory note. (Dkt. No. 1, Compl.) On May 7, 2021, Plaintiffs filed a first amended complaint ("FAC") for breach of a promissory note and account stated. (Dkt. No. 3, FAC.) According to the FAC, around March 10, 2017, the parties entered into a promissory note ("Note"), where Defendants promised to pay Plaintiffs the amount of $350,000 along with interest at a rate of 3% per annum. (*Id.* ¶ 8.) The total amount was to be amortized over 30 years beginning on the effective date of the Note, March 10, 2017, with monthly payments of $1,475.61 commencing on April 1, 2017 and continuing until April 1, 2022 at which time the balance of principal and interest were due. (*Id.* ¶ 9.) The Note was secured by a Second Trust Indenture and Security Agreement ("Second Trust Indenture") executed by Defendants, jointly and severally, as Grantors, Plaintiffs as Beneficiary, and Grant S. Snell, an attorney licensed to practice law in Montana, as Trustee. (*Id.* ¶ 11.) The real property subject to the Second Trust Indenture was commonly known as 32318 Bisson Lane, Polson, MT 59860 ("Property"). (*Id.; id.*, Ex. B.) The Second Trust Indenture provided that the conveyance of the Property was expressly made junior and subordinate to a First Trust Indenture by Defendants, as Grantors to Glacier Bank as Beneficiary in the amount of $500,000. (*Id.* ¶ 13.) Around June 28, 2018, the Property was foreclosed upon the First Trust Indenture and subsequent sale of the Property took place with a Notice of Trustee's Sale. (*Id.* ¶ 14.) Plaintiffs lost all security in the Property securing their Note on the Second Trust Indenture. (*Id.* ¶ 15.) Defendants made two payments prior to defaulting. (*Id.* ¶ 16.) Plaintiffs seek the amount owed on the original Note of $350,000. (*Id.* ¶ 18.)

On May 28, 2021, Defendants Chad Slade and Linda McCraken filed an answer and a counterclaim. (Dkt. Nos. 6, 7.) According to the counterclaim, on January 27,

---

[1] Linda McCracken states she has been erroneously sued as Linda McCraken. (Dkt. No. 7, Counterclaim ¶ 2.)

2017, Counterclaimants, residents of San Diego County, stayed at the Property for one night which was a bed and breakfast owned by Counterdefendants called "Gaynor Ranch". (*Id.* ¶¶ 11-12.) They flew to Montana to meet with a real estate agent to see a business for sale that they were interested in investing in the Flathead Lake area. (*Id.* ¶ 10.) They stayed at the Gaynor Ranch and while there the parties had a discussion about, *inter alia*, the Counterclaimants' interest in purchasing a business. Counterdefendant Nancy told Counterclaimants that she was a realtor and had listed the Property for sale as a bed and breakfast because they had other plans and no longer wanted to run a guest house. Nancy also explained that the current building was originally a single-family residence and there was a home above the garage and horse barn and that Counterdefendants renovated the Property to create individual guest rooms with individual bathrooms on the lower half of the house, and that as part of the business, they offered horse trail rides in the summer and hosted weddings. (*Id.* ¶ 12.)

The next day, Linda looked on the Internet at Counterdefendants' listing which was advertised as a "family compound." (*Id.* ¶ 13.) Linda later learned that Counterdefendants had previously listed the Property as "Beautiful Bed & Breakfast or Residence in the Majestic Mission Mountains." (*Id.*) When Linda asked Don about the discrepancy, he told her that the Property could be used as either a family compound or a bed and breakfast. (*Id.*)

On January 30, 2017, Counterclaimants and Nancy executed a Buyer Broker Agreement where Nancy would become the exclusive real estate broker for Counterclaimants until March 31, 2017. (*Id.* ¶ 14.) Counterclaimants also spent the night at the Property to discuss the potential purchase of the bed and breakfast. (*Id.* ¶ 16.) That evening, the parties discussed, *inter alia,* how well the bed and breakfast business had done but Don and Nancy had overspent in remodeling and they wanted to pay off their credits card debt, that Counterclaimants would not qualify for financing for the asking price of $899,000, but Don and Nancy said they would come up with a plan to allow Counterclaimants to purchase the Property and that the need for commercial

3

financing could be avoided by describing the property as a "family compound." (*Id.*) Nancy informed them of two problems with the Property: 1) the road that leads to the home was an easement and the "real" road should have been built through the back of the property and 2) the neighbors were not friendly and they should not get to know them. (*Id.*)

On January 31, 2017, Counterclaimants flew back to San Diego. (*Id.* ¶ 17.) Around February 12, 2017, the parties had a telephone conversation about certain terms regarding the purchase of the Property. (*Id.* ¶ 18.) On that day, Linda sent an email to Nancy memorializing the telephone conversation of certain agreed upon terms. (*Id.* ¶ 19.) Nancy responded with "We agree!" (*Id.* ¶ 20.) Nancy executed a document entitled "Relationship Consent" which provided for the agency relationship between Nancy and Counterclaimants to become a dual agency relationship which was executed around March 12, 2017. (*Id.* ¶ 21.) While Nancy asked Counterclaimants to sign the document, she did not explain that she was going to be representing both herself, Don and Counterclaimants as the real estate broker for the transaction and that Nancy had a conflict of interest as she would be occupying the roles of buyers' agent, sellers' agent, and seller in the same transaction. (*Id.*) Around March 12, 2017, Counterclaimants traveled to the Property and signed a Buy-Sell Agreement, Addendum to Buy-Sell Agreement for Additional Provisions, and Items for Sale. (*Id.* ¶ 22.) The documents contained the following false statements: 1) even though the transaction was to purchase a commercial property, Nancy used a standard residential real property Buy-Sell Agreement form; 2) Nancy listed the sales price as $660,000 even though the actual price was $850,000; and 3) although the actual purchase price did not include a cash component of $132,000, Nancy listed a $132,000 cash payment as part of the purchase price. (*Id.* ¶ 23.) Even though Nancy was a real estate broker, she did not explain the terms of the Buy-Sell Agreement to Counterclaimants. (*Id.* ¶ 24.) Counterclaimants also believe that Nancy intentionally concealed from Glacier Bank the contents of the Buy-Sell Agreement Addendum. (*Id.* ¶ 25.) Around March 24, 2017, the transaction closed.

(*Id.* ¶ 28.)  Beginning March 30, 2017, pursuant to the agreements, Linda began living at the Property and worked from the office located there and Don and Nancy continued to operate the main suite.  (*Id.* ¶ 29.)  Beginning April 2, 2017, Counterclaimants invested time and money to make improvements on the Property.  (*Id.* ¶ 30.)  Around May 25, 2017, a neighbor came by to return a dog that had run off the property and told Linda that he owned a home on the shared road and wanted to speak with Linda about Don and Nancy and past issues.  (*Id.* ¶ 31.)  Linda said she would contact him and they exchanged telephone numbers.  (*Id.*)  After the neighbor left, Nancy approached Linda and said "didn't you see me motioning at you not to talk to him?  You need to be careful who you talk to around here and do not share what goes on up here. And that guy is a registered sex offender."  (*Id.* ¶ 32.)

At the end of June 2017, Linda began to refinance the loans from Glacier Bank and from Don and Nancy by obtaining a commercial loan to pay them off.  (*Id.* ¶ 34.)  Around June 26, 2017, Nancy informed Linda that she could not obtain a commercial loan or line of credit because there were covenants with the neighbors that prevented the operation of a commercial business on the Property.  (*Id.* ¶ 35.)  Even though Nancy was their real estate broker, she never provided Counterclaimants with a copy of the preliminary title report or told them about the covenants.  (*Id.*)

On June 27, 2017, Linda realized that Don and Nancy had intentionally deceived Counterclaimants into purchasing the bed and breakfast knowing it could not be legally operated at the Property.  (*Id.* ¶ 37.)  Later that day, a neighbor came by wanting to speak to Don about the covenants but Don was not home.  The neighbor told Linda that he had originally placed the covenants into the deed but he had no power to remove them and he and the neighbors did not understand how Nancy was able to run the business and that they were not happy with the traffic that the bed and breakfast was bringing on the shared road.  (*Id.* ¶ 38.)  Counterclaimants were unable to generate any income to pay the mortgage to Glacier Bank and in July 2018, the Property was foreclosed on the first deed of trust.  (*Id.* ¶ 39.)

The counterclaim alleges eight causes of action for 1) breach of written contract against Counterdefendants; 2) breach of implied covenant of good faith and fair dealing against Counterdefendants; 3) recoupment based on fraud, against Counterdefendants; 4) breach of written contract against Nancy on the Buyer Broker Agreement; 5) breach of covenant of good faith and fair dealing against Nancy; 6) recoupment based on negligence against Nancy; 7) recoupment based on breach of fiduciary duty against Nancy; and 8) equitable indemnity against Nancy.  (Dkt. No. 7, Counterclaim.)  On each claim, Counterclaimants seek consequential damages as well as punitive damages on the fraud and breach of fiduciary duty claims.  (*Id.* at 27-29.[2])

Counterdefendants move to dismiss all claims in the counterclaim as barred by their Chapter 7 bankruptcy discharge, and alternatively, move to dismiss the claims as untimely.  (Dkt. Nos. 12, 17, 20.)

**Discussion**

**A.     Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).  Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is

---

[2] Page numbers are based on the CM/ECF pagination.

plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

**B.    Chapter 7 Bankruptcy Discharge**

Counterdefendants argue that all claims in the counterclaim must be dismissed because they are barred by the Chapter 7 discharge in bankruptcy. (Dkt. No. 12 at 8-11.) Counterclaimants respond that the equitable doctrine of recoupment allows them to offset claims for the purpose of avoiding an inequitable result. (Dkt. No. 17 at 3-5.)

A Chapter 7 discharge relieves the debtor of personal liability for all claims or debts that arose before the filing of the bankruptcy petition. 11 U.S.C. § 727(b)[3]; 11 U.S.C. § 524.[4] A "claim" includes a right to payment "whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured" or right to equitable remedy

---

[3] A discharge under this section "discharges the debtor from all debts that arose before the date of the order for relief . . . and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt." 11 U.S.C. § 727(b).

[4] A discharge "voids any judgment, at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged . . . [and] operates as an injunction against the commencement or continuation of any action . . . to collect . . . any [discharged] debt as the personal liability of the debtor . . . . 11 U.S.C. § 524(a).

"for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5).  A "debt" means "liability on a claim." 11 U.S.C. § 101(12).  The Bankruptcy Code uses the "'broadest possible definition' of claim to ensure that 'all legal obligations of the debtor, *no matter how remote or contingent*, will be able to be dealt with in the bankruptcy case.'" *In re SNTL Corp.*, 571 F.3d 826, 838 (9th Cir. 2009) (quoting *Cal. Dep't of Health Servs. v. Jensen*, 995 F.2d 925, 929–30 (9th Cir. 1993)).

Here, the Counterdefendants obtained a bankruptcy discharge on October 7, 2019 in the United States District Court for the Central District of California.  (Dkt. No. 12-1, Sublett Decl., Ex. A at 5.)  Therefore, all claims and debts that arose before the bankruptcy petition and concern their personal liability are discharged.

Counterclaimants do not dispute the effects of the bankruptcy discharge but argue that the equitable doctrine of recoupment allows them to seek an offset of the claims raised by Counterdefendants in the FAC.

Recoupment is an equitable doctrine arising from the common law, not expressly recognized in the Bankruptcy Code, and is not affected by a debtor's discharge or automatic stay.  *In re Madigan,* 270 B.R. 749, 754 (9th Cir. BAP 2001); *Newbery Corp. v. Fireman's Fund Ins*. Co., 95 F.3d 1392, 1399 (9th Cir. 1996) (recoupment not subject to automatic stay).  Recoupment "'is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim.'" *In re Madigan,* 270 B.R. at 754 (quoting *Newbery Corp.*, 95 F.3d at 1399).  It concerns a netting out of a debt arising from a single transaction in order to reduce the amount demanded and only to the extent of the plaintiff's claim.  *In re Straightline Invs., Inc.,* 525 F.3d 870, 882 (9th Cir. 2008).  In recoupment, "the respective claims may arise either before or after the commencement of the bankruptcy case, but they must arise out of the same transaction." *In re Madigan,* 270 B.R. at 754 (citation omitted).  Because recoupment is used as a defense, there is no "debt" or "claim" against

the estate property. *Id.* "Since recoupment is neither a claim nor a debt, it is unaffected by either the automatic stay or the debtor's discharge" and survives a bankruptcy discharge. *Id.*; *see In re Harmon*, 188 B.R. 421, 425 (B.A.P. 9th Cir. 1995) ("Because recoupment only reduces a debt as opposed to constituting an independent basis for a debt, it is not a claim in bankruptcy, and is therefore unaffected by the debtor's discharge."); *In re Flagstaff Realty Assocs.*, 60 F.3d 1031, 1035-36 (3d Cir. 1995) (post-petition funds owing to the landlord may be recouped against pre-petition claims owed by the landlord even if the creditor did not object to the plan or seek a stay pending appeal); *In re Norsal Indus., Inc.*, 147 B.R. 85, 88 (Bankr. E.D. N.Y. 1992) (recoupment was not subject to the automatic stay stating "setoff of a pre-petition debt against a pre-petition claim is explicitly stayed by virtue of § 362(a)(7). There is no such explicit prohibition on recoupment.").

Here, the parties do not dispute that the counterclaims arise from the "same transaction" as the FAC. The breach of promissory note at issue in the FAC is one of the same contracts that the Counterclaimants are suing on in the counterclaim and the alleged fraud in the counterclaim arises from the same facts that underlie the FAC; therefore, the counterclaims arise from the same transaction as the FAC. *See In re Madigan*, 270 B.R. at 758 ("Although an express contract is not necessary for the application of recoupment, courts often find that the 'same transaction' requirement is satisfied when corresponding liabilities arise under a single contract."). Because Counterclaimants maintain that all counterclaims constitute recoupment[5], they are not barred by the bankruptcy discharge order and their claims may not exceed the amount that Plaintiffs seek in the FAC. *See In*

---

[5] The Court notes that recoupment is explicitly only alleged as to the third, sixth, seventh counterclaims but the Court relies on the arguments made in Counterclaimants' opposition asserting that the motion to dismiss must be denied because all claims constitute recoupment. Otherwise, Counterclaimants do not oppose or provide argument that the claims not explicitly referred as recoupment in the first, second, fourth, fifth and eighth counterclaims should survive the bankruptcy discharge.

*re Straightline Invs., Inc.,* 525 F.3d at 882.  Accordingly, the Court DENIES Counterdefendants' motion to dismiss all claims based on the Chapter 7 discharge order.

**C.    Statute of Limitations**

Alternatively, Counterdefendants argue that fraud and breach of fiduciary duty counterclaims are barred by the statute of limitations because Counterclaimants allege they became aware of the impact of the alleged fraud on June 27, 2017 and did not file these two claims until nearly four years later.  (Dkt. No. 12 at 13-15.)  Counterclaimants respond that the first, second, fourth, fifth and eighth causes of action are timely without explanation and that the recoupment claims under the third, sixth and seventh counterclaims are not barred by the statute of limitations under the doctrine of recoupment.  (Dkt. No. 17 at 6-7.)  In reply to Counterclaimants' argument addressing the statute of limitation on all the claims, Counterdefendants reply that all claims are barred by the statute of limitations.  (Dkt. No. 20 at 4.)

Under Montana law, the statute of limitations for breach of contract is eight years.  Mont. Code Ann. § 27–2–202(1).  The statute of limitations for fraud is two years.  Mont. Code Ann. § 27-2-203.  The statute of limitations for breach of the covenant of good faith and fair dealing, negligence and breach of fiduciary duty is three years.  Mont. Code Ann. § 27-2-204(1).  The statute of limitation for equitable indemnity is five years.  Mont. Code Ann. § 27-2-231.[6]

In *Francisco v. Francisco*, 191 P.2d 317 (Mont. 1948), the Montana Supreme Court explained that "[r]ecoupment, at common law, is the right of the defendant, in the same action, to cut down the plaintiff's demand either because the plaintiff has not complied with some cross obligation of the contract on which he sues or because he has violated some duty which the law has imposed on him in the making or performance of

---

[6] In their reply, Counterdefendants state that the statute of limitations for equitable indemnity is three years under Mont. Code Ann. § 27-2-231(1).  However, that section states the statute of limitations for an action for relief not otherwise provided is 5 years.  Mont. Code Ann. § 27-2-231.

that contract." *Francisco,* 191 P.2d at 320 (quoting 47 Am. Jur. at 708). Recoupment claim must grow out of the very same transaction which furnishes the plaintiff's cause of action.'" *Id.* (quoting 47 Am. Jur. at 714). Because recoupment is a defense to reduce the amount of the plaintiff's recover, it is not barred by the statute of limitations. *Id.*; *see State ex rel. Egeland v. City Council of Cut Bank, Mont.*, 803 P.2d 609, 613 (Mont. 1990) (a "counterclaim, cross-claim, or third-party complaint for affirmative relief, other than a defensive claim where the defendant attempts to offset the amount a plaintiff can recover, such as by recoupment, contribution, or indemnity, must comply with the applicable statute of limitations."); *Bull v. United States*, 295 U.S. 247, 262 (1935) (because recoupment is a defense arising out of the same transaction upon which the plaintiff's action is based, it is never barred by the statute of limitations provided the main action is timely.); *see also Klemens v. Air Line Pilots Ass'n Int'l*, 736 F.2d 491, 501 (9th Cir. 1984) ("A claim for recoupment that would otherwise be barred by the statute of limitation may be brought to defeat a claim arising out of the same transaction."); *Vari-Build, Inc. v. City of Reno*, 622 F. Supp. 97, 100 (D. Nev. 1985) ("where the defendants' claim is for recoupment, the statute of limitations is not a bar; it may be availed of defensively so long as the plaintiff's cause of action exists."). However, an affirmative counterclaim, which seeks an adjudication of rights by the Counterclaimants and seeks an amount greater than what Plaintiff has alleged, is subject to the statute of limitations. *See Francisco*, 191 P.2d at 320 ("a demand of a defendant, whether pleaded by way of off-set, counter claim, or cross-bill, is regarded as an affirmative action, and therefore unlike a matter of pure defense, is subject to the operation of the Statute of Limitations and is unavailable if barred.").

Here, relying on Counterclaimants' argument that all their claims are based on a recoupment theory, (Dkt. No. 17 at 2, 5), the Court concludes that the statute of limitations does not bar these claims. *See Francisco,* 191 P.2d at 320. However, because recoupment is a defense, any recoupment claims should be raised in an answer; therefore, the Court GRANTS dismissal of the counterclaim. *See* Fed. R. Civ. P. 8(c)(2) ("If a

11

21cv777 GPC(NLS)

party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so."); *see DePaul Indus. v. City of Eugene*, Civ. No. 6:18-cv-00320-MC, 2020 WL 5078758, at *6 (D. Or. Aug. 27, 2020) (where the defendants asserted grounds for setoff and recoupment in the breach of contract counterclaims, court granted dismissal of counterclaim because a cognizable counterclaim asserts affirmative relief but granted leave to file an amended answer to re-allege the breach of contract counterclaim as setoff and recoupment).

The Court notes that in the Eighteenth Affirmative Defense, Defendants allege setoff and recoupment against any judgment entered against them for "Plaintiffs' misrepresentations and concealment of facts, Plaintiffs' breaches of fiduciary and other duties, Plaintiffs' violations of the covenant of good faith and fair dealing and other wrongful conduct and breach as alleged in the Defendants' Counterclaims filed with this Answer." (Dkt. No. 6, Ans. ¶ 39.) Because the answer references the counterclaim which the Court has dismissed, Defendants will be granted leave to amend their answer to include any additional facts or claims to support their recoupment defense.

## Conclusion

Based on the above, the Court GRANTS Counterdefendants' motion to dismiss the counterclaim. Defendants are granted leave to file an amended answer in compliance with the Court's order within 14 days the Court's order.

IT IS SO ORDERED.

Dated: September 2, 2021

Hon. Gonzalo P. Curiel
United States District Judge